Ruffin, C. J.
 

 • This seems to be as plain a case for the plaintiff as can be. She has the property in the slaves both under the Act of 1792, which makes parol sales of slaves valid, when accompanied by aetual delivery, and that of 1820, which makes adverse possession for three years a good title, excepting only in the case of oral gifts. That the plaintiff claimed under a sale, and not a gift, is clear. It is true, she did not call witnesses directly to the fact of her purchase, nor does she produce a receipt under her vendor’s hand for the price.
 

 But the defendants established the fact for her by their own evidence. They produce from Houston the plain
 
 *510
 
 tiff’s obligation to him. for tbe proper treatment of the slaves and tbeir delivery at the plaintiff’s death ; wherein it is recited that the obligee, Houston, had sold the girl to the plaintiff at the price of
 
 $850,
 
 and that she had paid the same and received the negro. We say that the instrument recites a sale, because it says, the plaintiff had received the
 
 negro from
 
 Houston and paid for her, and was “to have the entire service and possession” of the negro; and it is difficult to tell what is property in a slave if the right to the exclusive possession and service be not, whether it be for years or for life or for ever. But it is said, that a life estate merely in a slave cannot be created orally, but that a deed or writing is required by the Act of 1823. That is admitted, without at all weakening the plaintiff’s case. For, the whole effect of the argument is, that, although the parties intended for her only a life estate, yet that the legal operation of the transaction was to give her the absolute
 
 property at law.
 
 We think it very probable that the parties perfectly understood that such was the legal effect; as that would rationally account for the obligation coming from the plaintiff, reciting that she had purchased but a life interest, and obliging her to have the negroes delivered at her death, instead of such an obligation or ex-ecutory'contract on the part of Houston as the legal owner, to let the plaintiff have the use or enjoyment of the negro for life. This circumstance makes this case the converse of
 
 Smith
 
 v.
 
 Margrave,
 
 3 Hawks 560, in which Smith received an absolute conveyance for the slave from Buckhart and at the same time executed the instrument granting the sevices of the negro to Buckhart for life; and it was held that Smith did not intend thereby to part from the property in the slave, because, being for the life of the grantee, it would, in effect annul the whole transaction and place the parties as if no deed had been made at all. But here the instrument is executed by the plaintiff, not to give a life estate, or the ser
 
 *511
 
 vices for life to another, but to declare that she is really entitled to the possession and services of the slave but for her life, and contracting then to return, reconvey, her and her issue to the former owner. If, therefore,
 
 Smith
 
 v.
 
 Hargrave
 
 was law, which was much doubted, it rather supports than meditates against the plaintiff’s title
 
 \
 
 for, if she had not the title at iaw, the natural course would have been that Houston should give her some in-* strument, as permanent evidence of his obligation to allow her the enjoyment, rather than that she should give the obligation she did to him. The executory contract, was really from her to him, and not
 
 vice versa,
 
 and the judgment ought to be affirmed. It is to be remarked, although the plaintiff may have had the absolute legal title, that no injustice has been done by the verdict ascertaining the damages against the defendants who claint under Houston, since it expressly stated that the plaintiff on claimed, damages for the conversion for her life.
 

 Pías Curiáis Judgment affirmed